to the related case of United States v. Marin. Do I pronounce that right? Marin. Marin. Thank you. First, I'd like to object to counsel for Mr. Bush's continual statements that this was an attempted drug transaction by Mr. Marin. Obviously, we've contended many times that there was no attempt and this didn't go as far as being an attempt. And, in fact, the government dismissed the charge of attempted purchase of drugs in this case. Be that as it may, and obviously we were severed and our cases were separated, so counsel really doesn't know what our defense was, I don't think, at the time. Our appeal involves the denial of two motions we made in the trial court. The first, a motion to dismiss on the grounds of outrageous governmental misconduct. And I would like to point out to the court that this is not a case where we just have an unsavory character who helped the government ferret out crime. This is a case where obviously the character here is of the most unsavory type, but he is also a 16-year, at the time this incident occurred, government employee. He testified in 1999 that working for the government since he began in 1985, he made almost $400,000. This person had been working for the government for a long time. Not only had he been involved in misconduct, but we know that this informant continuously violated the law over all that period of time, not only the immigration laws by being here illegally, but by committing other crimes, including drug smuggling, violating getting DUIs and all that time getting special privileges for that. In fact, he testified at a hearing in 1999 that he knew that if he violated the law, the government would take care of him. He had to get out of jail free card. So this is a person who continually violated the law with the government's assent and the government's help. This is not only an informant who used drugs with the suspects that he went after, but this is an informant the government knew used drugs with his informants, because just a month before this incident happened, he was caught with drugs in his cell phone. He initially lied to them about why he had the drugs, but after taking a polygraph examination admitted that he had the drugs for his own use, that he was using drugs with the informant he was working in that case, which was a separate case from this one, and perhaps was selling drugs at that time. So not only does the informant use drugs, but the government has direct knowledge of that, and then in light of that, continues to use this informant and uses him in this case. The government also knew that this particular informant was not someone they sent in on particularized buys who had a suspicion that someone was selling drugs. Vaughn Walker had previously found that this informant's modus operandi was to go to bars and basically do cold calls, as you would say in the sales business, try to talk to people and find out who he could get to be involved in selling drugs so he could make money. And in fact, that's exactly what happened in this case that we proved at the evidentiary hearing. He met my client at a bar. They began talking about partying. Eventually it led to the use of drugs together, and eventually it led to these negotiations. What standard of review does this Court apply to the failure of the district court to dismiss the indictment for the reasons you've articulated? I think this Court reviews it de novo. And based on the evidence, the evidentiary findings of the district court made, the Court reviews it to determine in its own mind whether or not it violates due process. And that gets me to the point of the evidentiary issue that was involved here. I think it's pretty clear from the record that the district court judge at the first hearing indicated that our facts were uncontested. We presented an affidavit from Mr. Marin about the incidents that happened up to the drug sale. We submitted documented evidence about the informant's past. The government, instead of submitting a declaration from Mr. Rodriguez, the informant in this case, merely submitted an affidavit by the police officer that I talked to the informant and he told me that the cocaine-related incidents didn't happen. I assume by that the government means that he didn't use cocaine with Mr. Marin, but everything else happened. And the Court indicated that, making its ruling, that it assumed that the declaration and the evidence presented by Mr. Marin on this motion was uncontested by the government. At the second hearing, after the government gave me evidence, which they had known about before, that corroborated Mr. Marin's statements, the Court again said, well, I didn't consider Mr. Rodriguez's affidavit. I assume it meant Mr. Santolato's affidavit saying what Mr. Rodriguez said at the first hearing, and I think that's further evidence that it made a factual finding that the evidence we presented was correct. So this Court should review that evidence and decide whether due process has been violated. There's no need to remand it back to the district court for an evidentiary hearing because a finding was already made in this case. I would point out to this Court that there was a decision just announced Monday in the United States v. Hauler case. I have the number of it if the Court is interested, and I just found out about that case. And in that case, they didn't grant the motion because they didn't feel that the activity in that case was directly attributable to the government. In this case, clearly, the government had been using this informant for 16 years, had direct knowledge of how he was operating his modus operandi of drumming up business, how he was using with suspects. And in this particular case, the evidence is consistent with my final argument that they sought to sanitize this informant, knowing all that. Because if you have a really bad informant, even if he's good at what he's doing at getting people to sell or talk about drugs with him, the problem is you have to go to trial, and then that informant is going to have to testify. And the defense is going to destroy this particular informant. There is more evidence in this case than I've ever seen. So I don't think the government ever wanted to have that informant in front of the jury or to file an affidavit where he would be challenged to his credibility. And what happened here is for the government says Mr. Rodriguez just brought in another informant on his own, which I don't find to be credible, and he continued on with the transaction, this other informant who doesn't have a prior record, who they do call at Mr. Ford's trial and who can testify without being impeached by the defense. It seems to me that conduct is directly attributable to the government, establishes that they have knowledge that this informant is not someone that they could use, and they took steps to hide that information from us and, in fact, hid that information, even when we made the motion, filed the affidavit, told them what our facts were, didn't provide the corroborating information until later about the fact that he had actually stayed in the hotel, we said, where Mr. Marin met him at government expense. At the time, Mr. Marin said so. The fact that he did have a female with him when Mr. Marin said that he had a female with him during this meeting, which was never brought up before. So to me, this is shocking, outrageous, and beyond any of the other cases and requires a dismissal for a violation of due process. If you would like the Court to consider the recent case you referred to earlier in your argument. Yes. And if I could give the Court the number. Excuse me.   Yes. You can get a gum sheet from the clerk after your argument's over, write out the name and number of the case, and give a copy to opposing counsel. I will. Thank you. Thank you. You have about two minutes for rebuttal. Thank you. Thank you. Mr. Rooney. I guess it goes without saying. The government's position is pretty much diametrically opposed to everything Mr. Rainwater said. There's certain things we'll agree on, but I think from the get-go, we disagree. One of the real things, and I think I stressed it in my brief, one of the things I really disagree with is counsel's contention that he proved his version of the facts at the hearing, and at page 586 of the excerpt of record. Mr. Rooney, if you could move over just closer to the microphone. Yes. Page 586 of the excerpt of record, the district court said, again, assuming what Mr. Marin says is undisputed here, at least for the purposes of the motion, I don't find, and then he denies, the outrageous governmental conduct motion. In other words, the district court didn't make a factual finding. It says, Mr. Rainwater, Mr. Marin, let's even assume every single thing you say is true, I'm not finding that this is outrageous conduct. The excerpt of record, again, when the case came up again, when the motion was raised again, the district court said, in my prior ruling, I did make certain assumptions as far as Mr. Marin's version of the facts. What happened here? And I want to get off that. So the point of that is the district court did not make factual findings. This Court, of course, has to defer to the district court's factual findings. The district court said, I'm going to assume everything Mr. Marin is alleging is correct. Even with that, I don't find that there's outrageous governmental conduct that justifies the dismissal of this case. Was this individual informant, as has been alleged, in the country illegally? I'm the record doesn't reflect that. I don't have personal knowledge of it. I would assume not. I would assume that he's got some kind of visa that allows him to be here because he's a government informant. What counsel did was take Judge Walker's findings and apply them to the case at bar. In other words, everything. The same informant, isn't it? It's absolutely the same informant. He's still here now. Whether he's here in the country legally or illegally, I don't have personal knowledge. The record doesn't reflect. I would suspect he's here legally, but I don't have personal knowledge. I know he was, and we provided discovery of this to counsel. He was working with the informant's misconduct. What about his status? That's where I was going. He had misconduct while he was working with the Federal Bureau of Investigations and Customs in San Diego. When I found out about that, I provided it to counsel in the Jenks. No, I'm talking about in the point I'm making. Well, let me finish. In any part of the disclosure to the defense in this case, did the government reveal anything about is Rodriguez the name? Correct. Rodriguez's alienage. Whether he was in the country legally or not. To answer the question directly, no. Other than obviously we gave his testimony. I gave his testimony in the underlying Judge Walker's decision to the defense. So it touched on his alienage. And the point I was trying to make, and I was wandering to the point, was that if the man is working with the Federal agency, my experience is that the Federal agencies will not have informants that are in the country illegally. All the Federal informants are in the country legally. So that tells me this man was working for Federal agencies in San Diego and with DEA in Fresno. That tells me, based on my experience, that he's in the country legally. Is that in the record?  But that is my understanding of it. What happened in this case? The next thing, the, obviously the whole point of was there a finding or not by the district court is the standard review for this Court. The next point that Mr. Rainwater made is that Mr. Rodriguez fishes in the bars and did all these things that he's accused of at the Radisson Hotel and then, and that constituted outrageous government conduct. Well, what happened in this case, and Detective Santiano's declaration is in the excerpt of record, was put in in opposition to this motion, is Detective Santiano says, Mr. Rodriguez, the informant, did not bring me Mr. Marin. I sent Rodriguez to 1142 F Street. I sent Rodriguez to a particular location to see what he would find there. And that's not a bar. That's Mr. That's the place with the bus depot, et cetera, et cetera, and the auto detailing that Mr. Marin ran, and he found Mr. Marin, and Mr. Marin was willing to do a drug transaction. At Mr. Marin testified at Codefendant Ford's supervised release hearing, and his testimony is, starts at page 285, an excerpt of it starts at page 285 of the excerpt of record. And when I questioned Mr. Marin at that time, how did you meet, and the word used there is tito, but that's the informant, how did you meet, meet him, he came up, in other words, the informant came up to the car wash saying this and doing that, came up and approached Mr. Marin about a drug deal. The allegations that Mr. Rodriguez, the informant, did these things, did the allegations in the actions in the Radisson, all those things, came up after the fact. So that's one of the factual disputes that we've always had and that the district court found unnecessary resolve. I've gone through in the brief a lot of the cases on outrageous government conduct, and I submit to the Court that far more egregious conduct has been found not to meet the extraordinary standard necessary before an indictment is dismissed for outrageous government conduct. There's the, I believe it's the Simpson case, there's Simpson 1 and Simpson 2, where the informant's a prostitute. She has a sexual relationship with the defendant. She uses drugs with the defendant. They all say that's fine. That's not what happened in this case. In this case, there were recorded telephone calls between the informant and Mr. Marin. The district court had the opportunity to listen to them. The district court did listen to them. Mr. Marin was eager to do a 10-kilogram cocaine transaction. The government's theory has always been it's been liar on liar. The informant was pretending he was going to sell cocaine, and Mr. Marin was pretending he was going to buy it when he was actually going to rob it. That's what happened in this case. It's a standard kind of ugly drug transaction. It's not very nice people on both sides. There's various legal arguments as well. One of the other twists to this case is Mr. Marin did not plead guilty to a drug charge. He pled guilty to being a felon in possession of a firearm. There is no way in the world Mr. Rodriguez, the informant, had anything to do with Mr. Marin having that firearm other than Mr. Marin had that firearm so he could rob Mr. Rodriguez, the informant, of his cocaine. Mr. Marin has a long explanation of it in his testimony at the other defendant's supervised release hearing, basically saying that he was doing something with a car that was owned by a third person and it was going to go off somewhere. And so he was just simply being a good citizen and storing the gun, and then he was going to throw it away. The district court judge who was evaluating that testimony, his opinion is in the excerpt of record. And he found that, that explanation for the why Mr. Marin had this firearm to be completely lacking credibility. The point being, there's the Topetti case cited in my brief that there's a remedy for entrapment and outrageous government conduct when the government causes the crime to occur. The government's contention in this case is, no matter what you say about the informant, it's not the informant's fault, it's not something the informant generated, that Mr. Marin armed himself in violation of the law when he's the next felon, he's not supposed to have a firearm. I see my time is almost up. I can answer any questions. Roberts. I don't see any. Thank you for your argument. Rebuttal, Mr. Rainwater. Yes. I'd just like to point out a couple of things. First of all, Mr. Rooney read to the Court the judge's findings, but he didn't read the whole paragraph. And what happened was, when we started the hearing, we had an argument over whether there was an evidentiary hearing should be necessary or not. And I pointed out, unless the Court was going to accept our facts, we should have Mr. Rodriguez's testimony. And the first part of the Court's statement that Mr. Rooney read was, the reasons I didn't think we needed an evidentiary hearing is those issues are directly in front of me and the Court, in front of the Court, without any further evidence. And then he goes on to say, I'm going to dispute, assume Mr. Marin's statement is undisputed. So I don't think, I think the Court did make a finding. Next, as far as Mr. Rodriguez's illegality, he testifies, and that appears at 210 in the excerpts of records at the hearing in front of Judge Walker, that he came to this country illegally. He got amnesty approximately in 1993 or thereabouts and lost his amnesty. It doesn't say why he lost his amnesty. And since then, he's been staying part of the time in this country on what he called parole, which is some disposition he gets to be able to stay here to work with the government, but otherwise he's illegal. Finally, I'd like to address Mr. Rooney's argument that this was a robbery. And I've stated this several times before. That's a silly conclusion. If you're going to do a robbery, as Mr. Rooney asserts, and you're going to have some buddies come in to help you, you don't have one gun. They're not going to pass that one gun around them while they do the robbery as a muscle. It doesn't make sense. And finally, as to the fact that this charge is the firearm and not the drug case, the Holler case, which was decided Monday and I pointed out to the Court and I will leave it to the Court, indicated that a violation of governmental misconduct is not a defense. It is a finding that if due process is violated, the indictment must be dismissed. So I don't think it matters what the particular charge was here. Thank you. Okay. Thank both sides for their argument. The case just argued will be submitted for decision. And we'll proceed to the next case, which is from Hawaii.
judges: Canby, Hawkins, Duffy